CORONADO MINING CORPORATION, a corporation, Robert E. Holt, Marvin J. Schwarz, Leo N. Smith, Emil L. Winniski and Donlon Lobiondo (doing business under the name and style of Sinbad Partnership, Limited, a limited partnership organized and existing under the laws of the State of Arizona), Plaintiffs and Appellants,

v.

MARATHON OIL COMPANY, a corporation, Earth Resources, Inc., a corporation (successor to Vitro Mineral corporation,) Idaho Mining Corporation, a corporation, A. K. Wilson, Jr., and W. L. Wilson, Defendants and Respondents.

No. 14765.

Supreme Court of Utah.

March 30, 1978.

B. L. Dart, Jr. and Ralph L. Jerman of Jerman & Dart, Salt Lake City, for plaintiffs and appellants.

Frank J. Allen of Clyde & Pratt, Salt Lake City, for defendants and respondents.

WILKINS, Justice:

Plaintiffs brought action for damages alleging tortious interference with contractual relationships. From Judgment notwithstanding the verdict entered against them pursuant to Rule 50(b), U.R.C.P., by the District Court for Salt Lake County, plaintiffs appeal. Affirmed. Costs to defendants.

Defendants Earth Resources and Marathon Oil Company (the only defendants in this appeal) held 132 unpatented mining claims on property located in Emery County, Utah, known as the "Sinbad Claims." In June of 1971 these claims were leased to one Garcia under a written lease which required the lessee to do the necessary annual assessment work, and file proofs of labor according to federal and state law. This lease agreement contained the following restriction against assignment:

Lessee shall not assign this lease without the prior written consent of Lessor, except that Lessee may assign this Lease to Idaho Mining Corporation or to a partnership in which Idaho Mining Corporation or W. L. Wilson is a general Partner.

Garcia then granted to W. L. Wilson and Idaho Mining Corporation an option to purchase his interests in the claims. Plaintiffs organized a limited partnership, Sinbad Partnership, Limited, (hereafter, "Sinbad") and entered into a joint operating agreement with W. L. Wilson. Coronado Mining Corporation was named as the operator to conduct the assessment work and file the proofs of labor. The joint operating agreement which characterized the parties' relationship as a joint venture, specifically stated that it was not to be construed as a partnership. By this agreement, W. L. Wilson agreed to assign 80 percent of his interest to Sinbad. He was neither a limited nor a general partner of Sinbad.

During the years 1971 and 1972 the assessment work was done by plaintiffs and copies of the affidavits and proofs of labor were submitted to defendants with the notation that the labor was done by the "lessee, Sinbad Partnership Ltd." In March of 1973, executed assignments were submitted to defendants for approval. The first was an assignment from Garcia to W. L. Wilson, and his brother A. K. Wilson, Jr., and the second an assignment from the Wilsons to Sinbad. Defendants approved the first, refused consent to the second, and sent a letter to W. L. Wilson stating that defendants considered him in default of the lease due to a breach of a covenant not to further assign.

W. L. Wilson sent notice to Sinbad of his rescission of the joint operating agreement, and plaintiffs brought this action alleging that defendants had intentionally denied approval of the assignment and had given notice of default to W. L. Wilson for the purpose of forcing Wilson to rescind their agreement.

Defendants moved for summary judgment, arguing that they had a right under the lease to deny approval of the second

assignment. Plaintiffs opposed, arguing that defendants were estopped from asserting that right, or had waived it, since defendants were well aware of the involvement of the plaintiffs and the work that plaintiffs had done on the claims. The District Court granted defendant's motion partially, finding as a matter of law that defendants did have a continuing right to approve subsequent assignments. The Court also found that there were issues of fact with regard to estoppel and waiver, and ordered trial on those issues. At the trial which was before a jury, plaintiffs advised the Court that they would present evidence on the issue of estoppel only.

The evidence presented showed that defendants became aware of plaintiffs' activities on the claims in December, 1971, through a mining magazine article noting that Coronado Mining Corporation was planning to develop the Sinbad claims. In January, 1972, W. C. Cole, manager of Defendant Earth Resources called plaintiff Holt, who is president of Coronado Mining Corporation, and they discussed the proposed exploration and development of the claims by Sinbad.

Defendants then sent a letter to Garcia, with a copy to W. L. Wilson, as President of Idaho Mining Corporation, which stated in part:

It has now been confirmed by Robert Holt of Coronado, in a conversation with W. C. Cole, that they are considering the property. Although we have received no final documentation so far, it is understood that you are exercising your right under the lease to assign it to Idaho Mining Corporation. We must however, call your attention to, as well as to the attention of Idaho Mining Corporation by copy of this letter, that no other assignments of this property are authorized without our consent.

Wilson forwarded the letter to Holt.

In July 1972 Robison, defendants' landman, went to see W. L. Wilson in Grand Junction, Colorado, W. L. Wilson testified that he may have implied at this meeting, that he had a partnership with Coronado.

In September of 1972, Robison sent a letter to W. L. Wilson referring to the visit and stating:

On this occasion we also discussed the operation of this property by Coronado Mining with which you enjoy a partnership. We ask that you please furnish us written evidence of the existence of such partnership.

As a result of this letter, a copy of the 1972 assessment affidavit was forwarded to Robison "at the request of W. L. Wilson." The partnership documentation was not furnished to defendants.

In February, 1973, Robison met with Holt in Tucson, Arizona. Holt admitted that he referred to W. L. Wilson as his "partner" at this meeting, though he stated he did not use the term in the legal sense.

At the close of plaintiffs' evidence, defendants moved for a directed verdict, and renewed said motion at the close of defendants' evidence. The Court took the motion under advisement and submitted six special interrogatories to the jury. The jury returned the interrogatories, having found in favor of the plaintiffs on each of them, and specifically having found that defendants were estopped from disapproving the second assignment, noted ante.

Subsequently defendants' motion for judgment notwithstanding the verdict was heard. The Court granted the motion and entered its findings and judgment pursuant thereto. The Court found that the evidence was insufficient to support a finding of estoppel, insufficient to find that there was no legal justification for defendants' actions, and insufficient to support a finding of tortious interference of contractual relationships on the part of the defendants.

Plaintiffs argue that the Court invaded the province of the jury, and erred in entering its own findings of fact contrary to the findings of the jury on the special interrogatories.

Plaintiffs cite the case of *Koer v. Mayfair Markets*, 19 Utah 2d 339, 431 P.2d 566 (1967), wherein the trial court had vacated a verdict rendered on special interrogatories

returned by the jury in favor of plaintiff and entered judgment instead in favor of the defendant. In that case, this Court said:

> . . . the trial court can enter the judgment notwithstanding the verdict only for one reason—the absence of any substantial evidence to support the verdict.

■ Though plaintiffs cite *Koer*, the evidence therein was not substantial. This Court affirmed the judgment. It appears that the only difference between the *Koer* case and this matter is that here the District Court entered what it called "findings of fact," which were in each case contrary to the answers the jury returned on the special interrogatories. In each of its findings, however, the District Court stated, "The evidence in this case is insufficient *as a matter of law* to support . . . ." (Emphasis added.) A finding of insufficiency of evidence to support a finding of fact is properly a conclusion of law rather than a finding of fact, and is for the Court to determine.[1] The fact that these findings were mislabeled by the District Court does not change their inherent character, and plaintiffs' argument is therefore without merit.

■ Plaintiffs argue that the evidence was sufficient to support the jury's answers on the special interrogatories. In this context, plaintiff presents arguments concerning waiver and lack of justification. Waiver is not properly an issue here, however, as the plaintiffs advised the Court prior to the trial that they would present no evidence of waiver and would not rely on that theory. The matter of justification was presented to the jury, though it was not at issue. The District Court had, in granting partial summary judgment, determined that defendants had a legal right to approve subsequent assignments. The exercise of a legal right constitutes justification and is a complete defense to an action of tortious intervention of contractual rights.[2]

■ The only issue before the District Court, as noted ante, was whether defendants were estopped to assert their legal rights. In the case of *Morgan v. Board of State Lands*, Utah, 549 P.2d 695 (1976), this Court discussed the basis of estoppel and said:

> . . . Estoppel arises when a party . . . by his acts, representations, or admissions, or by his silence when he ought to speak, intentionally or through culpable negligence, induces another . . . to believe certain facts to exist and that such other . . . acting with reasonable prudence and diligence, relies and acts thereon so that he will suffer an injustice if the former . . . is permitted to deny the existence of such facts.

Have defendants here, by any act, representation or admission led plaintiffs to believe that a second assignment to them would be approved? There is no substantial evidence in the record that the defendants represented such an approval would be granted; as a matter of fact, Plaintiff Holt testified that neither Cole nor Robison told him that such an assignment would be approved. Plaintiffs claim that they were led to believe that the assignment would be approved because of the fact that defendants knew for a period of two years of plaintiffs' involvement on the claims and continued to allow them to do the work. Have defendants then, by their silence, when they ought to speak, induced plaintiffs to believe that the assignment would be approved? No. The evidence, on the contrary, discloses that defendants, at their first opportunity, advised their lessee (Garcia) by letter that they would not approve an assignment except the one which they assumed would be to a partnership in which either W. L. Wilson or Idaho Mining Company was a general partner. A copy of that letter was sent to Plaintiff Holt, and plaintiffs were therefore well advised of defendants' position. Did plaintiffs, then, act with reasonable prudence in relying on

---

**1.** See *Brigham v. Moon Lake Electric Association*, 24 Utah 2d 292, 470 P.2d 393 (1970).

**2.** *Bunnell v. Bills*, 13 Utah 2d 83, 368 P.2d 597 (1962).

their assumption that the assignment would be approved, in the face of information to the contrary? The evidence shows only that plaintiff carefully continued to lead defendants to believe that they were partners with Wilson. There is no evidence that defendants in any way misled plaintiffs.

The record amply supports the Court's conclusion that there was no substantial evidence to support a finding of estoppel against the defendants, and the Court properly dismissed plaintiffs' complaint with prejudice.

ELLETT, C. J., and CROCKETT and MAUGHAN, JJ., concur.

HALL, J., does not participate herein.