**In re Estate of** Pedro **Deleon Castro**, Deceased.
Appeal No. 93-018
Civil Action No. 92-147
March 8, 1994

Submitted on Briefs December 21, 1993[*]

Counsel for appellants Rita C. Sablan, Maria S. Castro and the estate of Rosalia C. Villagomez: David A. Wiseman, Saipan.

Counsel for appellee/estate administrator Augustine C. Castro: Vicente T. Salas, Saipan.

BEFORE: VILLAGOMEZ and ATALIG, Justices, and MACK, Special Judge.

ATALIG, Justice:

This appeal arises from a probate court order authenticating and admitting into evidence an undated, signed and handwritten document ("Document"). Subsequently, the court deemed the Document a "testamento" under Chamorro customary law. Based on the Document

---

and oral testimony, the court found that the decedent, Pedro Deleon Castro ("Pedro"), distributed his land to his sons and one grandchild.

We hold that the court did not abuse its discretion in admitting the Document into evidence. Furthermore, the court did not err in its interpretation and application of Chamorro custom in concluding that the Document is a testamento. Finally, we hold that the doctrine of res judicata did not bar the court's determination of Pedro's successors to one of the disputed parcels of property.

## ISSUES PRESENTED AND STANDARD OF REVIEW

The issues raised on appeal are:

I. Whether the probate court erred in ruling that the Document was executed by Pedro.

II. Whether the probate court erred in admitting the Document into evidence.

III. Whether the probate court erred in ruling that the Document is a testamento.

IV. Whether the probate court erred in not giving res judicata effect to a Trust Territory trial division judgment in this matter regarding the distribution of Pedro's Papago land to his heirs.

V. Whether the appellee should be estopped from claiming a distribution scheme based on the Document, which he held for fifteen years.

VI. Whether the appellee is barred by the doctrine of laches from offering the Document for probate.

First, the finding that Pedro signed the Document involves the authentication or identification of that document and whether or not that finding is supported by sufficient evidence. *See* Com. R. Evid. 901(a).[1] Whether sufficient evidence supports a court's finding is a legal conclusion reviewable de novo. *See Coronado Mining Corp. v. Marathon Oil Co.*, 577 P.2d 957, 960 (Utah 1978) (finding of sufficiency of evidence to support a factual finding is a legal conclusion).

---

[1] "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Com. R. Evid. 901(a). The Commonwealth Rules of Evidence apply to probate proceedings in the Superior Court. *See* Com. R. Evid. 101.

■ Second, the admission of that evidence at trial is subject to the abuse of discretion standard. *See Pangelinan v. Unknown Heirs of Mangarero*, 1 N.M.I. 387, 399 (1990).[2] The appellant bears the burden of showing such an abuse. *Id.*

■ Third, the legal nature and effect of a document involves a legal question subject to de novo review. *Cf. In re Estate of Camacho*, 4 N.M.I. 22, 23 (1993) (determination of validity of deed is a legal issue).

■ Fourth, whether or not res judicata applies is a legal question subject to de novo review. *Id.*; *In re Estate of Kaipat*, 3 N.M.I. 494, 497 (1993).

■ Finally, the factual issue of concealment and the affirmative defenses of laches and estoppel[3] are raised for the first time on appeal. We will not entertain factual issues raised for the first time on appeal,[4] and laches and estoppel are affirmative defenses waived where not pled below. *Palacios v. Trust Territory*, 2 CR 904, 908 (D.N.M.I. App. Div. 1986), *aff'd*,

838 F.2d 474 (9th Cir. 1988). This waiver rule is applicable to probate matters.[5] Therefore, we will not entertain the last two issues.

## FACTS AND PROCEDURAL BACKGROUND

■ Pedro, a Chamorro, was born on November 13, 1899. He and his wife, Virginia, had three sons, Augustine Camacho Castro ("Augustine"), Francisco Camacho Castro ("Francisco") and Pedro Camacho Castro ("Pedro, Jr."), and three daughters, Rita Castro Sablan ("Rita"), Maria Soledad Castro ("Maria") and Rosalia Castro Villagomez ("Rosalia"). Pedro and Virginia also raised (i.e., "poksai")[6] their grandson, David J. Castro ("David"). Rosalia died in 1974, leaving thirteen children.

Pedro owned three parcels of property, located at As Badsinas,[7] Papago[8] and Chalan Galaide, Saipan.[9] Before he died, Pedro executed the Document, which outlined a distribution of his land among his sons and David. Pedro later showed and read the Document simultaneously to

---

[2] Authentication or identification is a "condition precedent to admissibility," Com. R. Evid. 901(a), and distinct from the question of admissibility, which may involve other issues. *See* Michael H. Graham, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE [hereinafter "Graham"] § 6821 (interim ed. 1992). Had the appellants not split up the issues of authentication and admissibility, we would review them in their entirety under the abuse of discretion standard. *Cf. United States v. Blackwood*, 878 F.2d 1200, 1202 (9th Cir. 1989) (lower court's decision regarding sufficiency of the authentication of admitted handwriting reviewed for abuse of discretion).

[3] Laches and estoppel are affirmative defenses. *See* Com. R. Civ. P. 8(c).

[4] Concealment is a factual issue which we may not consider for the first time on appeal. *See Agulto v. Northern Marianas Inv. Group, Ltd.*, 4 N.M.I. 7, 10 (1993). Even if the court below addressed the issue of concealment, the Document was recorded on March 21, 1978, and, as such, notice was effectively given to the appellees. *See Bufton v. Ha*, 3 CR 776, 788 (N.M.I. Trial Ct. 1989) (citing 1 CMC §§ 3703, 3706, 3711). One CMC § 3711, cited in *Bufton* and pertaining to notice, is pertinently identical to 57 TTC § 11202 (1970 Ed.), which was in effect when the Document was filed in 1978.

[5] *See* Com. R. Civ. P. 1; *In re Estate of Taisakan*, 1 CR 326, 340-41 (D.N.M.I. App. Div. 1982) (waiver of laches argument due to failure to plead in objection to petitions) (citing Trial Ct. R. Civ. P. 8(c)). Additionally, the purpose of the doctrine of laches is to bar nondiligent claims, see generally *Rios v. Marianas Pub. Land Corp.*, 3 N.M.I. 512, 523-26 (1993); *Palacios v. Trust Territory*, 2 CR 904, 908-09 (D.N.M.I. App. Div. 1986), *aff'd*, 838 F.2d 474 (9th Cir. 1988), and not whether evidence supporting a claim was timely brought to light.

[6] The term "poksai" "means the raising of a child as though the child were a natural and legitimate child." *In re Estate of Cabrera*, 2 N.M.I. 195, 198 n.1 (1990).

[7] "Land situated in As Badsinas (Navy Hill) Saipan, identified as Lot E.A. 219 . . . containing an area of 26,102.2 square meters . . . as shown of PAWO Drawing Nos. 11408 and 11409 on file with the Clerk of Courts . . . ." Inventory at 1-2, *In re Estate of Deleon Castro*, Civ. No. 92-0147 (N.M.I. Super. Ct. filed June 29, 1992).

[8] "Land situated in East District, Papago, Saipan, identified as Tract Number 22794, and containing an area of 50,0002 [sic] square meters, more or less, as more particularly described on Drawing/Cadastral Plat Number 2017/77 . . . ." *Id.* at 1.

[9] "Land situated on the Island of Saipan . . . identified . . . . as: Part of Lot No. 1410 and part of Lot No. 1412, Chalan Galaide, Garapan District, Land Square No. 7, Section 1, Unit C . . . containing an area of 2.5 hectares, more or less." *Id.* at 2.

his wife Virginia and his sons Augustine and Pedro, Jr. He then gave the Document to his wife for safekeeping.[10] Pedro died on July 30, 1977.

On March 21, 1978, the Document was filed and recorded with the clerk of courts for the Marianas District. In the Document, Pedro distributed his property to his sons Augustine, Francisco and Pedro and to his grandson, David, as follows: (1) one-half of the Papago property to Augustine; (2) one-half of the Papago property to Francisco; (3) all of the Chalan Galaide property to Pedro, Jr.;[11] (4) one and one-half hectares of the As Badsinas property to Pedro, Jr.; and (5) the remaining hectare of As Badsinas property to David.

On June 23, 1977, the Land Commission issued a determination of ownership regarding Pedro's Papago property. On October 21, 1977, Augustine filed an appeal with the Trial Division of the Trust Territory High Court ("Trial Division") from the Land Commission's determination of ownership. *See* Appeal and Notice of Appeal, *Castro v. Commonwealth*, Civ. No. 256-77 (Trust Terr. High Ct. Trial Div. filed Oct. 21, 1977). The appeal was filed "on behalf of himself and the other heirs to the Estate of Pedro," *id.* at 1, to determine the total land area of the Papago property. *Id.* at 2.

On December 29, 1978, based on a stipulation by the parties, the Trial Division issued a judgment revising the Papago property description to include portions which Pedro had developed and improved. The judgment listed the "owners" of the property as the "heirs of the estate of Pedro Deleon Castro." *Castro, supra* (judgment). On December 5, 1985, the Land Commission issued a certificate of title in which the owners are simply listed as the "heirs" of Pedro.

On February 20, 1992, Augustine petitioned the probate court for letters of administration. Attached to the petition was a copy of the Document. He was appointed as administrator of Pedro's estate on April 4, 1992. On April 27, 1992, Rita, Maria and Rosalia's heirs ("appellants") objected to the admission of the Document and filed notice of their claim in Pedro's estate. Augustine filed an inventory on June 29, 1992, listing the three disputed parcels.

On August 13, 1992, the court, by written order, found that the Document was executed by Pedro and admitted it into evidence. Augustine filed a petition for final distribution on December 4, 1992, naming himself, Francisco, Pedro Jr., and David as the distributees of the three parcels. On April 5, 1993, the court issued a decree of final distribution granting Augustine, Francisco, Pedro Jr., and David their shares of the three parcels in accordance with the Document. The appellants timely appealed.

## ANALYSIS

### I. The Probate Court did not Abuse its Discretion in Admitting the Document into Evidence

■ The appellants argue that the probate court erred in both authenticating the Document and in admitting it into evidence. They contend that the evidentiary record does not support the court's finding that Pedro executed the Document. The authentication of a document is a "condition precedent to admissibility" which is subject to a standard of sufficient evidence. Com. R. Evid. 901(a); *see supra* note 1 and accompanying text. "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court *shall* admit it upon, or subject to the introduction of evidence, sufficient to support a finding of the fulfillment of the condition."[12] Com. R. Evid. 104(b) (emphasis added). This language is mandatory.

■ Because the appellants did not furnish this Court with the relevant evidentiary record on appeal, we will presume that sufficient evidence supports the probate court's authentication of the Document. Further, the appellants have failed to meet their burden of showing that the court abused its discretion in admitting the Document.

### A. *The Appellants Failed to Submit Relevant Evidence Regarding Authentication of the Document before this Court*

---

[10] *Deleon Castro.* Civ. No. 92-0147 (N.M.I. Super. Ct. Apr. 5, 1993) (decree of final distribution).

[11] We note a discrepancy between the probate court's findings and its actual distribution of the properties. It appears that the actual distribution was correct in that it conforms with the Document. We view the inconsistency in the court's factual findings on page three of the court's order as an oversight and harmless error.

[12] *Cf.* Graham, *supra* note 2, § 6821 (satisfaction of this authentication rule is "to be approached in accordance with [Fed. R. Evid.] 104(b)"). In other words, "once the court finds that evidence has been introduced sufficient to permit a reasonable [trier of fact] to find that the matter in question is what its proponent claims. a sufficient foundation for introduction in evidence has been laid." *Id.* (footnote and citation omitted).

■ Pursuant to Com. R. App. P. 11(a),[13] it is incumbent upon an appellant to assist in assembling the available record on appeal, see Com. R. App. P. 10(a),[14] and to comply with the requirements of Com. R. App. P. 10(b). Under Com. R. App. P. 10(b)(2), "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record all evidence relevant to such finding or conclusion." Because the lower court was required to use a sufficient evidence test for purposes of authenticating the Document, see *supra* note 1 and accompanying text, Com. R. App. P. 10(b)(2) is directly implicated.[15]

■ Where an appellant has failed to submit before the *appellate court* the evidentiary record relevant to an issue, federal appellate courts have interpreted the identical Fed. R. App. P. 10(b)(2) to mandate either summary affirmance, dismissal or nonconsideration of the issue.[16] *See, e.g., Syncom Capital Corp. v. Wade,* 924 F.2d 167, 169 (9th Cir. 1991) (interpreting Fed. R. App. P. 10(b)(2) to require submission of relevant transcript portions in appellate excerpts of record).[17]

These actions may be taken by those courts under Fed. R. App. P. 3(a) (identical to Com. R. App. P. 3(a))[18] for an appellant's failure to comply with Fed. R. App. P. 10(b). *See, e.g., Southwest Adm'rs, Inc. v. Lopez,* 781 F.2d 1378, 1380 (9th Cir. 1986) (citing Fed. R. App. P. 3(a); failure to order transcript for available record warrants dismissal); *Thomas v. Computax Corp.,* 631 F.2d 139, 141 (9th Cir. 1980).

■ We agree with these interpretations of Com. R. App. P. 10(b)(2) and 3(a) because we must be free to review the entire relevant evidentiary record to determine whether or not it supports the court's finding or conclusion. An appellant should not feel free to argue that a court's decision is not supported by the evidence without proffering that very evidence before this Court in its excerpts of the record. Otherwise, the burden of furnishing the record on appeal to this Court would unduly be placed upon the appellee and the reviewing court.[19]

■ Thus, we hold that where an appellant argues on appeal that a finding or conclusion is either unsupported by, or contrary to, the evidence, without submitting before this Court the relevant evidentiary record, dismissal or a presumption of sufficient evidence may be warranted. We note that dismissal is not mandatory but permitted, as is any "action . . . this Court deems appropriate." Com. R. App. P. 3(a). Any action we

---

[13] "Duty of Appellant. After filing the notice of appeal, or in the event that more than one appeal is taken, each appellant shall comply with the provisions of Rule 10(b) and shall take any other action necessary to enable the clerk to assemble the record." Com. R. App. P. 11(a).

[14] The available record on appeal includes "[t]he original papers and exhibits filed in the Superior Court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the Superior Court." Com. R. App. P. 10(a). This record is retained in the Superior Court "for use by the parties in preparing appellate papers." Com. R. App. P. 11(b).

[15] This rule is also implicated by the appellants' assertion that the probate court's authentication is not supported by the testimonial evidence that was before that court.

[16] Several federal appellate cases hold that an appellant's failure to designate and order relevant portions of the transcript, under the equivalent of Com. R. App. P. 10(b)(1), mandates dismissal as well. We distinguish the requirements, and judicial interpretation, of that rule from those imposed upon appellants in Com. R. App. P. 10(b)(2).

[17] *See also Deines v. Vermeer Mfg. Co.,* 969 F.2d 977, 979-980 (10th Cir. 1992) (Fed. R. App. P. 10(b)(2) charges "an appellant . . . with providing the appellate court with a suitable record on appeal"); *Portland Feminist Women's Health Ctr. v. Advocates for Life,* 877 F.2d 787, 789-790 (9th Cir. 1989) (failure to provide appellate court with transcript relevant to issues under Fed. R. App. P. 10(b)(2) may lead to dismissal or court's refusal to consider argument on appeal)). In *Deines,* the appellate court noted that while the appellant's excerpts of the record submitted before that court contained portions of the transcripts, they were not the portions relevant to resolving the issues on appeal. *Deines,* 969 F.2d at 979-80; *cf. Schmid v. United Bhd. of Carpenters & Joiners,* 827 F.2d 384, 386 (8th Cir. 1987) (while reviewing court declined to consider issue due to failure of appellant to order transcript, court noted that under Fed. R. App. P. 10 it is "important if not essential" that appellant bring all relevant portions of proceedings before appellate court).

[18] Both the federal and Commonwealth appellate rules provide that the "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as this Court deems appropriate, *which may include dismissal of the appeal.*" Com. R. App. P. 10(b)(2) (emphasis added); Fed. R. App. P. 10(b)(2) (emphasis added).

[19] We could request that the relevant portions of "designated parts of the record be transmitted[,]" pursuant to Com. R. App. P. 11(b). However, "'it is counsel's responsibility to see that the *record excerpts* are sufficient for consideration and determination of the issues on appeal and the court is under no obligation to remedy any failure of counsel to fulfill that responsibility.'" *Deines,* 969 F.2d at 979 (citation omitted; emphasis added).

take should be warranted by the circumstances of the case.

■ In this matter, the appellants argue that there is insufficient evidence supporting the probate court's authentication of the Document. However, they submitted before this Court only the order of which they complain. While the order refers to both documentary and testimonial evidence upon which the court relied in authenticating the Document, no portions of the relevant evidentiary record were submitted by the appellants in their excerpts of the record. Additionally, in their briefs the appellants freely interpreted, weighed, and advanced conclusions based upon testimonial evidence[20] to support their contentions. To us, this case represents the very conduct Com. R. App. P. 10(b)(2) is designed to prevent. However, because the authentication issue is only one of several raised by the appellants, we conclude that dismissal is inappropriate. Therefore, we will presume that there is sufficient evidence supporting the probate court's authentication of the Document. *Cf. Gamburg v. Cooper*, 642 P.2d 890, 891-92, 131 Ariz. 545 (Ariz. App. 1982) (presumption that evidence supported judgment where appellants failed to provide court with transcript). Consequently, we look only to see if the court abused its discretion in admitting the Document.[21]

---

[20] It appears as though portions of several transcripts were ordered and prepared, and are part of the available record on appeal in the Superior Court. Not only were these not submitted before this Court by the appellants but it is unclear as well from the record before us whether the ordered portions of transcripts are relevant to the issues on appeal. The appellants repeatedly cite to a transcript not before us. Our rules specifically state that where an appeal is based upon a challenge to the admission of evidence, the excerpts of record should contain the relevant portions of the transcript, including those where the disputed evidence was identified and offered. Com. R. App. P. 30(c)(1). In addition, any *"reference . . . made to evidence*, the admissibility of which is in controversy . . . *shall be made to the pages of the excerpt* at which the evidence was identified, offered, and received or rejected." Com. R. App. P. 28(e) (emphasis added).

[21] *Cf. Palmerin v. City of Riverside*, 794 F.2d 1409, 1414 (9th Cir. 1986), in which the Ninth Circuit Court of Appeals found that an appellant's argument that the lower court abused its discretion in admitting evidence could not be sustained where the record on appeal did not include that part of the trial in which the subject evidence was introduced. Com. R. App. P. 30(c)(1), the rough equivalent of Circuit Rule 13(a)(1) B cited by the court in *Palmerin*, is permissive and not mandatory. Therefore, we will entertain this issue on appeal.

## B. *The Probate Court did not Abuse its Discretion in Admitting the Document into Evidence*

■ Once a document has been properly authenticated, it must be offered into evidence and will be admitted unless excludable under another evidence rule, e.g. Com. R. Evid. 403. *See generally* Michael H. Graham, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6821 (interim ed. 1992).[22]

The Document appears relevant, pursuant to Com. R. Evid. 104(b) and 402, to the issue of Pedro's intent in distributing his property. Additionally, the court used several of the illustrative means listed in Com. R. Evid. 901(b) to authenticate the Document. The relevancy of the Document was not contested by the appellants, nor did they raise any other rule under which the Document should not have been admitted. Indeed, their entire argument on appeal against the admission of the Document into evidence is predicated upon their arguments against its authentication. They have failed to meet their burden of showing an abuse of discretion on the part of the probate court specific to the admission into evidence of the Document.

## II. The Probate Court's Decision that the Document is a Testamento was neither Erroneous under Chamorro Customary Law nor Barred by the Doctrine of Res Judicata

The appellants contend that the Document is not a testamento under Chamorro custom and that the court erred in its interpretation of that custom.[23] Further, they argue that Pedro's property was previously distributed to his heirs by the Trial Division, and, as such, res judicata

---

[22] The court is left with some discretion, after authentication, to admit evidence, because there are still preliminary admission issues which must be satisfied. For example, even if the relevancy of a document is satisfied under Com. R. Evid. 104(b) and 901, it could be excluded under another rule, e.g., Com. R. Evid. 403.

[23] A portion of their arguments as set forth in the brief in support of this argument implies an insufficiency of the evidence in support of the court's conclusion that Pedro effected a partida. However, for the reasons set forth in our discussion on the issue of the authentication of the Document, see *supra* notes 13-20 and accompanying text, this issue is not properly before us. However, we do note that the facts, as found by the probate court, are sufficient under customary law to establish that Pedro's Document is a testamento distributing his property by partida. *See infra* notes 24-25 and accompanying text.

applied to bar the probate court from distributing Pedro's property to only his male heirs.

 We conclude that the court did not err in concluding that the Document is a testamento evidencing Pedro's intent to distribute his real property. We also conclude that because the Trial Division did not address the issue of Pedro's specific successors[24] to his property, res judicata did not bar the probate court from determining Pedro's heirs to the parcels of land in his estate, pursuant to the terms of the testamento.

## A. The Probate Court did not Err in Ruling that the Document is a Testamento

 A partida is the distribution of family land holdings under Chamorro custom. Alexander Spoehr, SAIPAN: THE ETHNOLOGY OF A WAR-DEVASTATED ISLAND [hereinafter "Spoehr"] at 136-37 (Chicago Natural History Museum, Fieldiana: Anthropology, vol. 41, 1954). Generally, a partida occurs when the father calls the entire family together and outlines the division of the property among his children. Id. at 136; see also Pangelinan v. Tudela, 1 CR 708, 710-11 (D.N.M.I. App. Div. 1983), aff'd, 733 F.2d 1341 (9th Cir. 1984). However, the means by which a partida is accomplished are flexible and determined on a case-by-case basis. See, e.g., In re Estate of Cabrera, 2 N.M.I. 195, 207-08 (1991). One of the main reasons for the flexibility is that the intent of the decedent is paramount and must be effectuated where discerned. Spoehr, supra, at 136.[25] A

distribution by partida may be either testamentary, in that the children take the land upon the father's death, or inter vivos, with the children taking "formal and sole control of their land" immediately. Id. Additionally, a formal announcement may serve as the "validation of [a] previous allocation." Id. Occasionally, a partida takes written form. Id.

A testamento is a written partida which "preserves in writing the intent and directions of the male head of the family in regard[] to distribution of the family's property." In re Estate of Torres, 1 CR 237, 244 (D.N.M.I. App. Div. 1981). Depending upon the circumstances of each case, it may be the sole evidence of a testamentary or inter vivos partida under Chamorro custom, see, e.g., id. at 239, 244-46 (absent other evidence of partida court views testamento as customary will), or serve as a written confirmation of an oral partida. Cf. Camacho, 4 N.M.I. at 23 (conveyance by Chamorro confirmed by document entitled "Ultimo na Testamento").

The court did not err in its interpretation and application of the customary law of partida. It acknowledged that the intent of a male Chamorro decedent is paramount in governing the distribution by the probate court in accordance with the Chamorro custom of partida. The court authenticated the Document and admitted it into evidence. It then heard testimony regarding the Document and whether or not it was a testamento evidencing Pedro's intent to distribute his land by partida. Based upon the evidence before the court, it specifically found that Pedro called together his wife, Augustine, and Pedro, Jr., and read the Document to them—a document, written in Chamorro, which specifically set forth Pedro's intent as to how he wanted his property distributed. The court then concluded that the lands should be distributed in accordance with the testamento.

 That two of the distributees were not present does not negate the nature or validity of either the Document or Pedro's act of reading the Document. Cf. Cabrera, 2 N.M.I. at 207-08 (finding partida where father did not call family meeting but gave properties successively upon marriage). Furthermore, as noted by the probate court, Pedro's inclusion in the partida of only the males he raised was not inconsistent with Chamorro custom. See Spoehr, supra, at 137-44.[26]

---

[24] We view the widely used term "heirs" circumspectly because under our current probate law it means only those that take under intestate succession. 8 CMC § 2107(o). Until testacy proceedings, 8 CMC § 2107(cc), have been held to determine whether the decedent died testate or not, it is not clear whether potential takers would be "heirs" under intestacy proceedings or "successors" taking by intestacy, testacy or customary law. See 8 CMC § 2107(bb).

[25] "[T]he father's word is not to be disputed, there or thereafter. Parental respect is one of the major emphases of traditional Chamorro culture." Alexander Spoehr, SAIPAN: THE ETHNOLOGY OF A WAR-DEVASTATED ISLAND [hereinafter "Spoehr"] at 136 (Chicago Natural History Museum, Fieldiana: Anthropology, vol. 41, 1954). While the probate code is inapplicable to the distribution of Pedro's estate, see infra note 27, we note that it does recognize the importance of the probate court's discernment of the decedent's intent in distributing his property under customary law: "This [probate] law shall be liberally construed and applied to promote its underlying purposes and policies . . . [which include]: . . . to discover and make effective the intent of a decedent in distribution of his property." 8 CMC § 2104(a)-(b)(2) (cited in Cabrera, 2

N.M.I. at 206-07).

[26] While not setting it out as an issue, the appellants contend in their brief that the court's interpretation of distribution under Chamorro custom contravenes their right to equal protection of the law and is a discriminatory application of Chamorro custom. This argument is without merit. There is no right to inherit land under the Chamorro custom of partida.

**B.** *The Probate Court did not Err in not Giving Res Judicata Effect to the Trial Division Judgment Regarding the Distribution of Pedro's Papago Land*

██ Res judicata will apply to bar the subsequent litigation of a claim between the same parties where that claim has or should have been previously litigated. *Camacho*, 4 N.M.I. at 25.

 This doctrine is, however, inapplicable in this matter because the Trial Division did not litigate the question of who were Pedro's heirs. *Cf. In re Estate of Dela Cruz*, 2 N.M.I. 1, 12 (1991) (specific determination of and distribution of land to heirs "remained open for judicial resolution" subsequent to Land Commission title determination and determination of ownership in "heirs").[27] Rather, the Trial Division was sitting as an appellate court, pursuant to 67 TTC § 115,[28] to determine the *area* of land to which Pedro was entitled.

The issues presented before the Trial Division were the following: (1) whether the land size determined by the June 23, 1977, determination of ownership was approximately one to two hectares less than that which Pedro was told to develop and improve by the government; (2) whether government officials showed Pedro a parcel larger than that specified in the homestead permit and subsequent certificate of compliance; (3) whether Pedro did improve the larger area of land; and (4) as a matter of law, whether Pedro was entitled to the land which he actually developed. Therefore, the determination of Pedro's respective successors to the property was never before the Trial Division, nor should it have been.

**CONCLUSION**

Based on the foregoing, the probate court's decision is hereby **AFFIRMED**.

---

That Pedro effected what appears to the appellants to be a discriminatory distribution of his property did not dispense with his ability to distribute his land in the manner he chose.

[27] Because Pedro died before the effective date of the probate code, the distribution of assets in his estate is not subject to that code. *See In re Estate of Rangamar*, 4 N.M.I. 72, 75 (1993). However, we note that under the current Commonwealth Code and rules, heirship matters should be determined by a court sitting in probate. For res judicata to apply, there must be a valid final judgment. *In re Estate of Camacho*, 4 N.M.I. 22, 25 (1993). For a judgment or order to be valid, the court or administrative body must have subject matter jurisdiction *and* the parties must have had notice. RESTATEMENT (SECOND) OF JUDGMENTS §§ 1 & cmt. b, 83 cmt. d (1982). "[*N*]*otice is adequate only if:* . . . (*c*) [*t*]*he form of the notice and the method employed for transmitting it sufficiently comply with the procedure prescribed for giving notice* . . . ." *Id.* § 2 (emphasis added). It is the rules of probate which "govern notice and pleadings and all proceedings" under probate law, 8 CMC § 2203, which applies to "the affairs and estates of decedents and missing persons domiciled in the Commonwealth." 8 CMC § 2201. Therefore, if the notice rules of probate are not applied by the Superior Court, notice may be inadequate because the prescribed procedures for notifying potential successors to property might not have been followed.

[28] A determination of ownership by a land commission shall be subject to appeal by any party aggrieved thereby to the trial division of the high court at any time within one hundred twenty days from the date of said determination. Such appeal shall be treated and effected in the same manner as an appeal from a district court in a civil action . . . and the powers of the high court with regard thereto shall be the same . . . .